IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:24-cv-00013-BO-RJ

| | |
|---|---|
| ROBERT D. WHITE,<br><br>                 Plaintiff,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, *et al.*,<br><br>             Defendants,<br><br>NATIONAL WILDLIFE FEDERATION;<br>NORTH CAROLINA WILDLIFE<br>FEDERATION<br><br>          Intervenor-Defendants. | **DEFENDANTS' REPLY<br>MEMORANDUM IN SUPPORT OF<br>CROSS MOTION FOR SUMMARY<br>JUDGMENT** |

# TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

Glossary ................................................................................................................... v

Introduction .............................................................................................................. 1

Argument ................................................................................................................. 2

I.   Mr. White lacks standing, and his claims are unripe. ......................................... 2

    A.   Mr. White does not have standing *per se* to challenge the adjacent
        wetlands provisions. ............................................................................. 2

    B.   Mr. White fails to demonstrate standing. ............................................ 3

    C.   Mr. White's claims are not ripe for review. ........................................ 5

II.  The adjacent wetlands provisions of the Amended Regulations conform
    with *Sackett* and the *Rapanos* plurality it adopts. ........................................... 7

    A.   Mr. White misreads *Sackett* and the *Rapanos* plurality. ...................... 7

    B.   The Amended Regulations correctly do not require a continuous
        surface *water* connection. ...................................................................... 9

    C.   The Agencies' implementation guidance is unreviewable. .................. 10

III. The adjacent wetlands provisions accord with broader statutory and
    constitutional background principles. ............................................................... 11

    A.   The adjacent wetlands provisions comport with the "clear
        statement" rule. .................................................................................... 12

    B.   The doctrine of constitutional avoidance has no role here, and the
        adjacent wetlands provisions fall within the Agencies' delegated
        authority and respect due process. ...................................................... 13

IV.  Any remedy should be narrowly tailored. ....................................................... 15

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Agred Found. v. U.S. Army Corps of Eng'rs*,
  3 F.4th 1069 (8th Cir. 2021) ......................................................................................... 2

*Babb v. U.S. Drug Enf't Agency*,
  146 F. App'x. 614 (4th Cir. 2005) .............................................................................. 4, 5

*Camp v. Pitts*,
  411 U.S. 138 (1973) ..................................................................................................... 15

*Catron Cnty. Bd. of Comm'rs v. U.S. Fish & Wildlife Serv.*,
  75 F.3d 1429 (10th Cir. 1996) ....................................................................................... 3

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ......................................................................................................... 5

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
  91 F.4th 342 (5th Cir. 2024) ......................................................................................... 2

*Doe v. Bush*,
  323 F.3d 133 (1st Cir. 2003) ......................................................................................... 6

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ....................................................................................................... 2

*Georgia v. Wheeler*,
  418 F. Supp. 3d 1336 (S.D. Ga. 2019) .......................................................................... 6

*Gill v. Whitford*,
  585 U.S. 48 (2018) ....................................................................................................... 15

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
  No. CV 219-050, 2024 WL 1088585 (S.D. Ga. Mar. 1, 2024) ..................................... 8

*Grocery Mfrs. Ass'n v. EPA*,
  693 F.3d 169 (D.C. Cir. 2012) ...................................................................................... 2

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ................................................................................................... 15

*Lewis v. United States*,
  88 F.4th 1075 (5th Cir. 2023) ....................................................................................... 8

*Mahdi v. Stirling*,
    20 F.4th 846 (4th Cir. 2021)...................................................................................6

*Markle Ints., LLC v. U.S. Fish & Wildlife Serv.*,
    827 F.3d 452 (5th Cir. 2016)..................................................................................3

*Maryland v. United States*,
    360 F. Supp. 3d 288 (D. Md. 2019) .......................................................................7

*McDonnell v. United States*,
    579 U.S. 550 (2016) .............................................................................................14

*Miller v. Brown*,
    462 F.3d 312 (4th Cir. 2006)..................................................................................6

*Mills v. United States*,
    36 F.3d 1052 (11th Cir. 1994)..............................................................................13

*Rapanos v. United States*,
    547 U.S. 715 (2006) ....................................................................................1, 9, 10

*Reno v. Flores*,
    507 U.S. 292 (1993) ..................................................................................1, 12, 13

*Sackett v. EPA*,
    598 U.S. 651 (2023) ....................................................................1, 8, 9, 10, 12, 14

*South Carolina v. United States*,
    912 F.3d 720 (4th Cir. 2019)..................................................................................5

*Texas v. United States*,
    523 U.S. 296 (1998) ...............................................................................................6

*United States v. Ace Black Ranches, LLC*,
    No. 1:24-00113-DCN, 2024 WL 4008545 (D. Idaho Aug. 29, 2024).....................8

*United States v. Chameleon, LLC*,
    No. 3:23-CV-00763, 2024 WL 3835077 (E.D. Va. Aug. 15, 2024).......................8

*United States v. Riverside Bayview*,
    474 U.S. 121 (1985)..............................................................................................10

*United States v. Sharfi*,
    No. 21-cv-14205 (S.D. Fla. Sept. 21, 2024) .....................................................8, 14

*United States v. Sweeney*,
No. 2:17-cv-00112-KJM-SCR, 2024 WL 4527260 (E.D. Cal. Oct. 18, 2024)..........................9

*United States v. Valentine*,
No. 5:22-cv-00512, 2024 WL 4379735 (E.D.N.C. Sept. 27, 2024)......................................8, 9

*United States v. Wise*,
No. 5:14-cv-844, 2015 WL 5918027 (EW.D.N.C. Oct. 9, 2015) ..........................................15

*ViroPharma, Inc. v. Hamburg*,
777 F. Supp. 2d 140 (D.D.C. 2011) .....................................................................................5

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ....................................................................................................13, 14

**Statutes**

33 U.S.C. § 1311 ...................................................................................................................2

33 U.S.C. § 1311(a) ............................................................................................................12

33 U.S.C. § 1344 ...........................................................................................................4, 12

33 U.S.C. § 1370 ................................................................................................................12

**Code of Federal Regulations**

33 C.F.R. § 328.3(a)(4)(ii) ...................................................................................................1

33 C.F.R. § 328.3(c)(2) .........................................................................................................1

40 C.F.R. § 120.2(a)(4)(ii) ....................................................................................................1

40 C.F.R. § 120.2(c)(2) .........................................................................................................1

**Federal Register**

88 Fed. Reg. 3004 (Jan. 18, 2023) ..........................................................................1, 4, 9, 11

88 Fed. Reg. 61964 (Sept. 8, 2023) ...............................................................................9, 11

iv

**GLOSSARY**

| | |
|---|---|
| 2023 Rule | Revised Definition of "Waters of the United States," 88 Fed. Reg. 3004 (Jan. 18, 2023) |
| adjacent wetlands provisions | The portions of the Amended Regulations codified at 33 C.F.R. § 328.3(a)(4), (c)(2) (Corps) and 40 C.F.R. § 120.2(a)(4), (c)(2) (EPA) |
| Agencies | U.S. Army Corps of Engineers and U.S. Environmental Protection Agency |
| Amended Regulations | The regulations put in place by the 2023 Rule, as amended by the Conforming Rule: 33 C.F.R. § 328.3 (Corps); 40 C.F.R. § 120.2 (EPA) |
| Conforming Rule | Revised Definition of "Waters of the United States"; Conforming, 88 Fed. Reg. 61964 (Sept. 8, 2023) |
| CWA or the Act | Clean Water Act, 33 U.S.C. § 1251 *et seq.* |
| Enforcement Case | *United States v. White*, No. 2:23-cv-00001-BO-RN (E.D.N.C.) |
| PI Order | This Court's Order denying Plaintiff's Motion for Preliminary Injunction, D.E. 41 |
| Pl. Mem. | Plaintiff's Memorandum in Support of Motion for Summary Judgment, D.E. 58 |
| Pl. Reply | Plaintiff's Combined Reply in Support of Motion for Summary Judgment and Memorandum in Opposition to Defendants' and Intervenor-Defendants' Cross Motions for Summary Judgment, D.E. 65 |
| U.S. Mem. | Defendants' Combined Memorandum in Support of Cross Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, D.E. 62 |

## INTRODUCTION

The Court should grant summary judgment in favor of Defendants U.S. Environmental Protection Agency and the U.S. Army Corps of Engineers ("Agencies"). Plaintiff Robert White's facial challenge to the adjacent wetlands provisions of the Amended Regulations fails. *See* 33 C.F.R. § 328.3(a)(4)(ii) and (c)(2) (Corps); 40 C.F.R. § 120.2(a)(4)(ii) and (c)(2). The Amended Regulations made necessary changes to the 2023 Rule, 88 Fed. Reg. 3004 (Jan. 18. 2023), to conform to *Sackett v. EPA*, 598 U.S. 651 (2023), and to the plurality opinion in *Rapanos v. United States*, 547 U.S. 715 (2006), that *Sackett* adopts. Relevant here, those changes re-defined when adjacent wetlands are covered under the Clean Water Act ("CWA" or "Act") as "waters of the United States."

Although Mr. White initially satisfied the Court that he has standing and that his claims are ripe, he has failed to establish jurisdiction at this advanced stage of the case. Mr. White challenges only the adjacent wetlands provisions, but he has not established a specific injury traceable to those provisions. Further, the lack of concrete hardship renders his facial challenge unripe.

Even if jurisdiction were to exist, the adjacent wetlands provisions directly align with *Sackett* and the *Rapanos* plurality for the reasons articulated by this Court in its preliminary injunction order. *See* PI Order, D.E. 41. Mr. White has failed to establish that those provisions are unlawful in *any* circumstance, let alone in *all* circumstances, which he must show to prevail upon a facial challenge. *See Reno v. Flores*, 507 U.S. 292, 301 (1993).

# ARGUMENT

## I.    Mr. White lacks standing, and his claims are unripe.

### A.    Mr. White does not have standing *per se* to challenge the adjacent wetlands provisions.

Article III does not confer "standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally" and has "a strong moral, ideological, or policy objection to a government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Rather, a party invoking the jurisdiction of federal courts must show a "concrete" and "particularized" injury-in-fact that has "already occurred" or is "likely to occur soon." *Id.*

Despite this requirement, Mr. White erroneously contends that he has standing because he is "the object of the Amended Rule." Pl. Reply 3, D.E. 65. Mr. White is not the object of the Amended Regulations; he is not automatically regulated merely for owning land with wetland features potentially or actually covered under the CWA. *See* U.S. Mem. 7-8, D.E. 62; *see also Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 175 (D.C. Cir. 2012) (determining that petitioners were not the object of government actions that did "not on their face directly impose regulatory restrictions, costs, or other burdens"). Although the Amended Regulations' definition of "waters of the United States" (including "adjacent" wetlands) governs the scope of areas *where* permits may be required, permits are required only *if* a person engages in specified conduct, i.e., discharges a pollutant, relative to such areas. 33 U.S.C. § 1311.

Regardless, even if Mr. White were the object of the Amended Regulations, "merely being subject to . . . regulations, in the abstract, does not create an injury." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 350 (5th Cir. 2024); *accord Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1074-75 (8th Cir. 2021) (holding that even if the court were

to accept plaintiff's assertion that it is the object of the agency's action and under threat of enforcement, the threat is "speculative and not imminent" to establish injury-in-fact). Attempting to show otherwise, Mr. White overreads the holdings in Endangered Species Act cases. *See* Pl. Reply 3-4. Mr. White ignores that, in both of the cases he cites, the courts found that plaintiffs demonstrated concrete injuries. *See Catron Cnty. Bd. of Comm'rs v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1433 (10th Cir. 1996) (finding designation of critical habitat injured plaintiff by preventing "the diversion and impoundment of water by the County, thereby causing flood damage to county-owned property"); *Markle Interests, LLC v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452, 463–64 (5th Cir. 2016), *rev'd sub nom. on other grounds Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9 (2018) ("The Landowners' assertion of lost property value . . . is a concrete and particularized injury that supports standing."). As these cases make clear, Mr. White must still establish that the adjacent wetlands provisions cause him a concrete injury. By failing to show that his desired actions are likely subject to CWA permitting under the Amended Regulations and likely would not be in their absence, he has not done so.

  **B.**  **Mr. White fails to demonstrate standing.**

  Mr. White does not dispute that a higher burden of standing proof is required at the summary-judgment stage. Pl. Reply 3 n.2. He has not carried that burden because his declaration fails to show that he plans to take an action that would occur in or around adjacent wetlands that constitute "waters of the United States," that such action would involve a regulable discharge of a pollutant, and that would not be excluded or exempted by statute or regulation. U.S. Mem. 8-9. Mr. White's reply brief does not engage with these required elements of standing or otherwise remedy his deficient showing.

For example, while Mr. White again describes actions that he is interested in taking purportedly but for the adjacent wetlands provisions, Pl. Reply 6, he again fails to provide facts sufficient to conclude that the activities in question would occur on jurisdictional property, U.S. Mem. 8 (describing failure to engage with adjacent wetlands standard). He also again fails to show facts indicating whether his desired activities would require a permit. U.S. Mem. 8. For example, he alleges that he would like to continue using his property for crop production as he has done for many years, but he has had to leave some of this land fallow due to the Amended Regulations. White Decl. ¶¶ 9, 11, 24, D.E. 57-1. This conclusory assertion ignores (1) that the Amended Regulations, in line with longstanding practice, exclude prior converted cropland and other farmland features from CWA jurisdiction, *see* 88 Fed. Reg. at 3105-06, 3142-43, and (2) that the Amended Regulations do not affect CWA exemptions from Section 404 permitting requirements for many established farming, ranching, and silviculture activities where those activities do occur in covered waters, *see* 88 Fed. Reg. at 3010; 33 U.S.C. § 1344(f)).

Next, Mr. White asserts that he is injured due to the Amended Regulations' "*expansion* of regulatory authority" and imposition of "increased regulatory burdens" on Mr. White. Pl. Reply 5. But the Amended Regulations, tailored to address the *Sackett* decision, are in fact narrower than the prior definition, and Mr. White provides no concrete information why these narrower Amended Regulations have led to unlawful regulation on his property. Thus, Mr. White has no plausible injury due to any expanded jurisdiction.

Nor do Mr. White's CWA violations at issue in the Enforcement Case, *United States v. White*, No. 2:23-cv-00001-BO-RN (E.D.N.C.), demonstrate his standing to challenge the Amended Regulations. Pl. Reply 6. Mr. White is not at risk of additional enforcement under the Amended Regulations for the same preexisting CWA violations at issue in that case. *See Babb v.*

*U.S. Drug Enforcement Agency*, 146 F. App'x. 614, 622 (4th Cir. 2005) (res judicata "serve[s] to limit relitigation of issues settled in separate, prior litigation"). Accordingly, the fact that the United States is pursuing the Enforcement Case against Mr. White based on his prior conduct in particular "waters of the United States" does not in and of itself give him standing to challenge the Amended Regulations on their face in this separate action.

Finally, Mr. White claims injury due to "steps required to ascertain whether his activities are even subject to that permitting process to begin with." Pl. Reply 7. Any harm that Mr. White claims to suffer from the "uncertainty" of whether the adjacent wetlands provisions apply to areas he owns, including the hiring of consultants or the foregoing of possible projects, White Decl. ¶ 20, does not qualify as an injury for standing purposes, *ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140, 147 (D.D.C. 2011), *aff'd*, 471 F. App'x 1 (D.C. Cir. 2012) (stating purported business-uncertainty injuries "are highly nebulous in both character and degree, and are a far cry from the type of 'concrete and particularized' injury required for Article III standing"); *cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983) ("It is the *reality* of the threat of . . . injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Moreover, these alleged harms are not fairly traceable to the Amended Regulations, as Mr. White would have to determine the necessity of obtaining a permit under the CWA in any case.

### C.    Mr. White's claims are not ripe for review.

Mr. White's claims are also unripe. *See* U.S. Mem. Argument I.C. The issues his claims present are not fit for judicial review, and Mr. White would not suffer hardship absent judicial review. *See South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019).

Mr. White fails to rebut the Agencies' fitness argument: Mr. White's facial challenge is not fit for review because Mr. White's purported injuries "may not occur at all." U.S. Mem 9

(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). That is, Mr. White has not shown

that he will pursue activities likely requiring a permit on property qualifying as an adjacent

wetland under the Amended Regulations but not under Mr. White's purportedly proper view of

the statute. Rather than counter this point, Mr. White argues that his claims "present[] a purely

legal question." Pl. Reply 9; *see also id*. 10-11. But that is a separate fitness consideration, *Miller*

*v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) ("A case is fit for judicial decision when the issues

are purely legal *and* when the action in controversy is final and not dependent on future

uncertainties." (emphasis added))—one that the Agencies did not assert following the Court's

initial consideration of this issue, PI Order 10. Mr. White's non-response waives this fitness

argument. *Mahdi v. Stirling*, 20 F.4th 846, 905 (4th Cir. 2021) ("Failure to respond to an

argument results in waiver." (quotation omitted)).

      Mr. White's hardship argument likewise fails. U.S. Mem 9-10. For support, Mr. White

looks to cases such as *Georgia v. Wheeler*, in which a coalition of states challenged a different,

and indisputably broader, "waters of the United States" rule. 418 F. Supp. 3d 1336, 1344 (S.D.

Ga. 2019) (adjudicating challenge to 2015 rule, which relied on the significant-nexus standard

that *Sackett* rejects). That the court there found hardship to states says nothing about whether Mr.

White has established hardship here. *Doe v. Bush*, 323 F.3d 133, 141 n.9 (1st Cir. 2003)

(ripeness is a case-specific inquiry). He has not.

      Mr. White next claims hardship on the ground that "the Amended Rule has already been

*specifically* resolved against him by the Agencies, in at least two instances." Pl. Reply 11-12. Mr.

White's meaning is not entirely clear, but the examples he cites do not show the imposition of

"any immediate obligations" resulting in hardship. *Id.* Again, the simple fact that some of Mr.

White's property is jurisdictional does not, in the abstract, impose any burdens, *id.* at 12; he

would have to show that he intends to take an action on those properties requiring a permit. As for Mr. White's separate sand mine example, *id.*, the purported enforcement threat from 2018 is stale, and the Agencies have never threatened "additional enforcement," as Mr. White contends, White Decl. ¶¶ 22-23. *See also Maryland v. United States*, 360 F. Supp. 3d 288, 314 (D. Md. 2019) (finding no standing where the plaintiff did not allege a violation of law but instead "relie[d] on a longer causal chain with a broken first link: it speculates that the government *may*" act illegally (emphasis added)).

## II. The adjacent wetlands provisions of the Amended Regulations conform with *Sackett* and the *Rapanos* plurality it adopts.

If the Court reaches the merits, Mr. White's facial challenge to the adjacent wetlands provisions, and the Agencies are entitled to summary judgment.

### A. Mr. White misreads *Sackett* and the *Rapanos* plurality.

The adjacent wetlands provisions conform to *Sackett* and the *Rapanos* plurality opinion. *See* U.S. Mem. 11-22. Mr. White's arguments do not.

Mr. White wrongly contends that the Amended Regulations' "omission of the central 'indistinguishability' (or, alternatively, 'no clear demarcation') requirement is unlawful." Pl. Reply 13. The Act carries no "central" requirement that, to qualify as "waters of the United States," adjacent wetlands with a continuous surface connection to covered waters must be separately shown to be as a practical matter indistinguishable from covered waters or lacking a clear demarcation between waters and wetlands. Under this Court's correct reading of the Act, *Sackett*, and the *Rapanos* plurality, "[t]he continuous surface connection powers the test." PI Order 18. Thus, the adjacent wetlands provisions are lawful.

Mr. White's appeal to "common sense" fares no better. Pl. Reply 13. He argues: "a wetland abutting a road is clearly distinguishable from the road—even if there exists a

7

continuous *physical* connection between wetland and road." *Id.* This analogy bears no relation to the question presented. Wetlands, unlike roads, are "semi-aquatic." *Sackett*, 598 U.S. at 677 (citation omitted).

Mr. White's reliance on case law similarly fails. *See* Pl. Reply 13-18. This Court, when denying Mr. White's motion for a preliminary injunction, explained the limited import of *Lewis v. United States*, 88 F.4th 1075 (5th Cir. 2023), and *Glynn Environmental Coalition, Inc. v. Sea Island Acquisition, LLC*, No. CV 219-050, 2024 WL 1088585 (S.D. Ga. Mar. 1, 2024) (appeal pending). *See* PI Order 20. Likewise, when cross moving for summary judgment, the Agencies explained the narrow inquiry regarding pleading standards in *United States v. Chameleon, LLC*, No. 3:23-CV-00763, 2024 WL 3835077 (E.D. Va. Aug. 15, 2024), and *United States v. Ace Black Ranches, LLC*, No. 1:24-00113-DCN, 2024 WL 4008545 (D. Idaho Aug. 29, 2024), and the non-final nature of the magistrate judge's report and recommendation in *United States v. Sharfi*, No. 21-cv-14205 (S.D. Fla. Sept. 21, 2024), *see* U.S. Mem. 15 n.1 & Ex. 1 (attaching that court's D.E. 184). Following that report and recommendation in *Sharfi*, the United States filed extensive objections. Pl. Reply, Ex. B (attaching that court's D.E. 186). To date, the district judge in *Sharfi* has not adjudicated those objections.

The only relevant case law developments since this Court's preliminary injunction ruling favor the Agencies, not Mr. White. In *United States v. Valentine*, No. 5:22-cv-00512, 2024 WL 4379735 (E.D.N.C. Sept. 27, 2024), Chief Judge Myers rejected arguments about *Sackett* and the *Rapanos* plurality that were virtually identical to those advanced by Mr. White. Denying defendants' motion for partial judgment on the pleadings, the *Valentine* court explained that *Sackett* and the *Rapanos* plurality "make clear that a continuous surface connection *is* the quality that renders a wetland practically indistinguishable from a water of the United States." 2024 WL

4379735, at *4; *see also United States v. Sweeney*, No. 2:17-cv-00112-KJM-SCR, 2024 WL 4527260 (E.D. Cal. Oct. 18, 2024) (denying defendants' post-trial motion, concluding that *Sackett* does not change the Act's coverage of tidal waters and their abutting wetlands). That reading of *Sackett* and the *Rapanos* plurality is correct, aligns with this Court's PI Order, and supports the Agencies' entitlement to summary judgment.

    **B.**    **The Amended Regulations correctly do not require a continuous surface *water* connection.**

    In accordance with the express terms of *Sackett*, 598 U.S. at 678, 684, and the *Rapanos* plurality opinion it adopts, 547 U.S. at 742, 757, the Amended Regulations: (1) define "waters of the United States" to include wetlands that are "adjacent" to covered waters, and (2) define "adjacent" to mean "having a continuous surface connection." 88 Fed. Reg. at 61969; 88 Fed. Reg. at 3142; *supra* at 1. There is no continuous surface *water* requirement, as Mr. White claims. *See* U.S. Mem. 17-19; 88 Fed. Reg. at 3096; *see also Valentine*, 2024 WL 4379735, at *4 (rejecting defendants' argument that the United States' complaint "is defectively pled because it does not allege a continuous surface connection *that is aquatic*.") (citation omitted; emphasis in original). Words to that effect simply do not appear in *Sackett* or the *Rapanos* plurality opinion. *See, e.g.*, *Sackett*, 598 U.S. at 678, 684; *Rapanos*, 547 U.S. at 742, 757.[1] Instead, as the Supreme Court explains, adjacent wetlands are "waters of the United States" if they bear a "physical connection" to covered waters, "which makes them as a practical matter *indistinguishable*" from such waters. *Rapanos*, 547 U.S. at 755; *see also, e.g., id.* at 747 ("physically unconnected wetlands" lack coverage); *Sackett*, 598 U.S. at 667 (referencing the *Rapanos* plurality's

---

[1] Mr. White cites excerpts from the noncontrolling concurring and dissenting opinions from *Rapanos* that purport to characterize the plurality opinion that *Sackett* adopts. *See* Pl. Reply 19.

conclusion that CWA coverage includes "wetlands with such a close physical connection to [covered] waters").

Mr. White's argument is further refuted by *United States v. Riverside Bayview*, 474 U.S. 121 (1985), which *Sackett* and the *Rapanos* plurality follow, *see Sackett*, 598 U.S. at 665, 677; *Rapanos*, 547 U.S. at 725, 735, 740-41. *Contra* Pl. Reply 20. In *Riverside Bayview*, the Court "recognized 'the inherent difficulties of defining precise bounds to regulable waters.'" *Sackett*, 598 U.S. at 677 (quoting *Riverside Bayview*, 474 U.S. at 134); *see also Sackett*, 598 U.S. at 677 ("[T]he transition from water to solid ground is not necessarily or even typically an abrupt one" due to semi-aquatic features like shallows and swamps) (quoting *Riverside Bayview*, 474 U.S. at 132)). Further, *Riverside Bayview* held that, "[i]n such a situation," the Agencies "could reasonably determine that wetlands 'adjoining bodies of water' were part of those waters." *Sackett*, 598 U.S. at 677 (quoting *Riverside Bayview*, 474 U.S. at 135 & n.9). Mr. White's position flies in the face of not only *Riverside Bayview*'s ruling that wetlands abutting covered waters are themselves covered, but also the Court's broader recognition of, and the Act's allowance of coverage for, a transitory zone between waters and solid ground. U.S. Mem. 17-19.

**C.    The Agencies' implementation guidance is unreviewable.**

Mr. White's reply does not appear to further dispute the Court's prior conclusion (PI Order 23-24) that Mr. White's facial challenge to the adjacent wetlands provisions cannot encompass the Agencies' uncodified discussion in the 2023 Rule's preamble. *Compare* U.S. Mem. 19-22 *with* Pl. Reply 21-22. Mr. White does, however, contend that "the Court should view with skepticism the Agencies' position that the unamended portions of the 2023 Rule constitute a precise codification of the *Rapanos* plurality's test." Pl. Reply 21-22. The contention mischaracterizes the Agencies' rulemaking effort and is inapposite in any event.

When the Agencies promulgated the 2023 Rule, they invoked the *Rapanos* plurality standard as a basis for CWA coverage secondarily to the significant-nexus standard (i.e., waters and wetlands are "waters of the United States" if they meet either the narrower *Rapanos* plurality standard or the broader significant-nexus standard). The Agencies' explanation that their approach was "informed by Supreme Court decisions, including *Rapanos*," "not an interpretation of the multiple opinions in *Rapanos*," 88 Fed. Reg. at 3021, reflected the reality that: (1) *Rapanos* did not address all aspects of CWA coverage (e.g., the consolidated cases involved only wetlands located near tributaries of traditional navigable waters); and (2) there was no controlling decision from the Supreme Court at that time which reconciled the Justices' competing interpretations of the Act.

Regardless, since *Sackett,* there is no dispute that only one standard governs the Act's coverage of adjacent wetlands: the continuous-surface-connection requirement from *Sackett* (and the *Rapanos* plurality *Sackett* adopts). *See, e.g.,* 88 Fed. Reg. at 61966 ("The agencies will continue to interpret the remainder of the definition of 'waters of the United States' in the 2023 Rule consistent with the *Sackett* decision."). Because the Agencies accurately codified that controlling standard, Mr. White's facial challenge to the adjacent wetlands provisions is unavailing. Further, any of his claims which purport to take issue with the Agency's implementation guidance are unreviewable.

## III.    The adjacent wetlands provisions accord with broader statutory and constitutional background principles.

If the Court finds jurisdiction, it should uphold the adjacent wetlands provisions. Because the provisions directly incorporate the language of *Sackett*, they are consistent with the clear statement rule, fall well within the Agencies' delegated authority, and comport with traditional notions of due process. Mr. White's general invocation of background statutory principles and

the doctrine of constitutional avoidance cannot alter the applicable standard for the Court's review. Under that standard, Mr. White's facial challenge fails because he does not establish that the adjacent wetlands provisions are unlawful in all circumstances. *Reno*, 507 U.S. at 301.

A.    **The adjacent wetlands provisions comport with the "clear statement" rule.**

Mr. White's reliance on the clear statement rule is entirely without merit. The CWA, in prohibiting unauthorized discharges to "navigable waters," contains the necessary "clear statement" and unquestionably provides for federal regulation over "waters of the United States." *See* e.g., 33 U.S.C. §§ 1311(a), 1344(a); *see also* U.S. Mem. 22-24; PI Order 20-22. Mr. White asserts that the adjacent wetlands provisions violate this background interpretative canon because they incorporate some, but not all, of the language in *Sackett*. Pl. Reply 22. But *Sackett* rejected extending CWA federal jurisdiction over "anything defined by the presence of water" because that reading would undermine the primary jurisdiction of states. 598 U.S. at 674. *Sackett*, in accounting for the clear statement rule, expressly recognized that exercising federal jurisdiction over adjacent wetlands with a continuous surface connection to covered waters does not contravene the rule. *Id*. at 674-75. Moreover, the CWA itself contemplates that concurrent jurisdiction exists. *See, e.g*., 33 U.S.C. § 1370. There is no support for Mr. White's extreme position that the exercise of concurrent federal and state jurisdiction over regulable conduct in the same geographic area violates the clear statement rule.[2]

_____

[2] Nor can the Court appropriately conclude that the adjacent wetlands provisions, as a factual matter, has "resulted in the regulation" or "frustrated" state regulation over Mr. White's sand mining, crop production, or other activities on farmlands that would not otherwise have been regulated under the CWA. Pl. Reply 23. As addressed above, the Agencies have not directly exercised jurisdiction over these activities by Mr. White, Mr. White's alleged harms are speculative, and Mr. White has provided no concrete information about how the adjacent wetlands provisions exercise overbroad jurisdiction on his lands in a way that harms him. *See supra* Arg. I. In any event, Mr. White argues that his conduct is covered under the requisite

**B.** **The doctrine of constitutional avoidance has no role here, and the adjacent wetlands provisions fall within the Agencies' delegated authority and respect due process.**

Mr. White's constitutional avoidance arguments are misplaced. U.S. Mem. 24; PI Order 21. Mr. White does not explain how the adjacent wetlands provisions, which directly incorporate the language of *Sackett*, raise serious doubts about the constitutionality of the statutory provision, "waters of the United States," Pl. Reply 24-26. Mr. White seemingly invokes the doctrine so that the Court will view the adjacent wetlands provisions through a general lens of skepticism. But the inquiry before the Court is whether the adjacent wetlands provisions are unlawful *under all circumstances*. *Reno*, 507 U.S. at 301. The Court should reject Mr. White's use of the doctrine to apply a different standard of review. Even if the doctrine applied, the adjacent wetlands provisions fall well within the Agencies' authority and comport with due process principles.

**1.** **The adjacent wetlands provisions fall within the Agencies' delegated authority.**

Mr. White does not dispute that the Agencies are delegated the authority to define "waters of the United States." U.S. Mem. 24-26; PI Order 22-23.[3] No court has ever found otherwise. *Id.*; *see also Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) (affirming that "Congress provided sufficiently precise standards by which to judge the delegation" of authority to define "waters of the United States"). Indeed, Mr. White recognizes that the phrase "waters of the United States" is the linchpin of the CWA's regulatory regime. Pl. Reply 4. Thus,

---

federal authorizations, thus acknowledging that concurrent federal and state authority may exist. Pl. Reply 23 n.16.

[3] If an unlawful delegation were to exist (it does not), applying the doctrine of constitutional avoidance could not "cure" it. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) ("We have never suggested that an agency can cure an unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute.")

defining "waters of the United States" is critical to implementing the CWA. This admission alone puts Mr. White's nondelegation arguments to rest.

*Sackett* recognized that CWA jurisdiction encompasses adjacent wetlands with a continuous surface connection to covered waters. The adjacent wetlands provisions faithfully implement this. *Sackett* did not question the CWA's intelligible principle, nor the Agencies' delegated authority to issue regulations defining "waters of the United States." Rather, the Supreme Court rejected the significant-nexus test because it had no statutory basis. 598 U.S. at 680. The "intelligible principle" standard is not demanding, *Whitman*, 531 U.S. at 472-74, and is separate from whether the challenged regulations exceed statutory authority under the Administrative Procedure Act. The latter inquiry does not raise nondelegation concerns.

**2.      The adjacent wetlands provisions respect due process.**

The adjacent wetlands provisions likewise comport with due process requirements. U.S. Mem. 26-27. Mr. White's concerns about a "vaguely defined 'continuous surface connection,'" lack merit. Pl. Reply 25. *Sackett* adopted the language of *Rapanos* and imposed the continuous-surface-connection requirement to address due process concerns. 598 U.S. at 680-81. Thus, incorporating the term "continuous surface connection" directly into the adjacent wetlands provisions provides sufficient "definiteness" to the meaning of "waters of the United States" to avoid "encourag[ing] arbitrary and discriminatory enforcement." *Id*. (quoting *McDonnell v. United States*, 579 U.S. 550, 576 (2016)). Due process does not require perfect clarity, U.S. Mem. 26-27, and Mr. White does not cite any authority that requires the heightened level of notice he desires. The non-final report and recommendation in *Sharfi* did not expressly address due process, and the language that Mr. White highlights refers to the significant-nexus test that the Agencies have eliminated. 2:21-cv-14205 (S.D. Fla. Sept. 21, 2024), D.E. 184 at 31 n.12.

Further, the Enforcement Case is outside the scope of the administrative record and should not be considered in deciding whether the adjacent wetlands provisions comport with due process. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). In any event, the mere existence of an enforcement action is not itself evidence of arbitrary or discriminatory enforcement.

Lastly, Mr. White has not explained how adding a standalone "indistinguishability" requirement to the adjacent wetlands provisions would resolve his due process concerns by providing greater notice of proscribed conduct. Whether CWA jurisdiction exists would still require a case-specific, fact-driven inquiry.

## IV.    Any remedy should be narrowly tailored.

While the Agencies disagree that Mr. White is entitled to any remedy, Mr. White's suggested request for a nationwide vacatur of the adjacent wetlands provisions lacks foundation and should be rejected. Pl. Reply 2 & n.1. Any relief "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Further, it must be narrowly tailored to correspond to the Court's holding on the merits and "must not be more burdensome to the defendant than necessary to redress the plaintiff's injuries." *Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring) (cleaned up). Thus, if any remedy is warranted, the Agencies request the opportunity to submit supplemental briefing on the appropriate relief. *See, e.g.*, *United States v. Wise*, No. 5:14-cv-844, 2015 WL 5918027, at *2 (E.D.N.C. Oct. 9, 2015) (ordering supplemental briefing on the appropriate remedy).

## CONCLUSION

For the foregoing reasons, the Court should grant the Agencies' summary judgment motion, deny Mr. White's summary judgment motion, and conclude this case.

15

Respectfully submitted,

TODD KIM
Assistant Attorney General
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

Of Counsel:                              /s/ Sarah Izfar
Karyn I. Wendelowski                    ANDREW J. DOYLE, FL Bar No. 84948
Elise O'Dea                             SONYA J. SHEA, CA Bar No. 305917
Environmental Protection Agency         SARAH IZFAR, DC Bar No. 1017796
                                        JIN HYUNG LEE, DC Bar No. 198095
Daniel Inkelas                          ELLIOT HIGGINS, NY Bar No. 5737903
Erica Zilioli                           United States Department of Justice
U.S. Army Corps of Engineers            Environmental Defense Section
                                        P.O. Box 7611
                                        Washington, DC 20044
                                        Tel: (415) 744-6469 (Doyle)
                                        Tel: (303) 844-7231 (Shea)
                                        Tel: (202) 305-0490 (Izfar)
                                        Tel: (202) 514-2640 (Lee)
                                        Tel: (202) 598-0240 (Higgins)
                                        Fax: (202) 514-8865
                                        andrew.doyle@usdoj.gov
                                        sonya.shea@usdoj.gov
                                        sarah.izfar@usdoj.gov
                                        jin.hyung.lee@usdoj.gov
                                        elliot.higgins@usdoj.gov

                                        MICHAEL F. EASLEY, JR.
                                        United States Attorney

                                        ANDREW KASPER
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Eastern District of North Carolina
                                        150 Fayetteville Street Suite 2100
                                        Raleigh, NC 27601
                                        Office Telephone: (919) 856 - 4829
                                        N.C. Bar No. 44515

                                        Counsel for Defendants

16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I electronically transmitted the foregoing to the

Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to

registered counsel for all parties.


                                                          */s/Sarah Izfar*